UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DARRELL GRIMES,
    *Plaintiff*,

v.

McDONALD *et al.*,
    *Defendants*.

No. 3:20-cv-00152 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Darrell Grimes is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed this lawsuit *pro se* and *in forma pauperis* against several DOC officials, principally alleging that the defendants used excessive force against him and were deliberately indifferent to his serious medical needs in violation of his constitutional rights. For the reasons set forth below, I will allow Grimes's claim for excessive force to proceed against all defendants but will dismiss his claim for deliberate indifference to serious medical needs.

**BACKGROUND**

Grimes names four defendants in his amended complaint: (1) Lieutenant Jeffrey McDonald; (2) Correction Officer Oscar Ramos; (3) Correction Officer David Roman, Jr.; and (4) Correction Officer Cretella. Doc. #23 at 1-3; Doc. #29. The following facts as alleged in the amended complaint are accepted as true only for purposes of this ruling.

In August 2018, while confined as a pretrial detainee at Bridgeport Correctional Center ("Bridgeport"), Officer Ramos informed Grimes that the Lieutenant wanted to speak with him, but Grimes asked for some time to comply because he was using the restroom. *Id.* at 7 (¶¶ 1-2).[1]

---

[1] Bridgeport Correctional Center houses both pretrial detainees and sentenced prisoners. *See Bridgeport Correctional Center*, CONN. DEP'T OF CORRECTION, https://portal.ct.gov/DOC/Facility/Bridgeport-CC (last visited June 8, 2020). The DOC website indicates that Grimes is currently unsentenced. *See Offender Information Search*

1

Instead, Officer Ramos opened Grimes's cell and, when Grimes protested, Ramos called him a "snitch." *Ibid.* (¶¶ 3-4). Ramos left and returned with Officer Roman, Officer Cretella, and Lieutenant McDonald, who asked Grimes what was "going on" between him and Ramos. *Id.* at 7-8 (¶¶ 4-5). Grimes explained that he has simply been in his cell for 20 minutes. *Id.* at 8 (¶ 6). When Ramos subsequently ordered him out of his cell, Grimes asked why because he "didn't do nothing at all" and did not "trust [Ramos] at all," and he also informed Lieutenant McDonald that he had "problems" with Roman and Ramos and was "scared." *Ibid.* (¶¶ 6-7).

"All of a sudden," Ramos tried to pull Grimes out of his cell by his shirt around his neck, and when Grimes pulled away, Ramos punched him in the face "with a lot of force." *Ibid.* (¶ 7); *see also id.* at 20, 25. Roman and Cretella "followed" Ramos in hitting Grimes in the face and stomach, as McDonald sprayed his face with mace. *Id.* at 8 (¶¶ 8-9), 13 (¶ 28). Grimes fell to the floor of his cell "begging for them to stop" and "screaming out" that he did not do anything, that his eyes were burning, and that he could not see, but the three correction officers continued to kick him in the face, stomach, and back. *Id.* at 8-9 (¶¶ 9-10). Then, when Grimes was handcuffed, one of the correction officers struck him again in the face and stomach. *Id.* at 9 (¶ 10).

After the beating, Grimes was taken to the restrictive housing unit ("RHU") "without being properly decontaminated from the chemical agent . . . or being provided with medical treatment . . . ." *Ibid.* (¶ 11). While he was being strip-searched, Grimes attempted to explain to an unknown female lieutenant what had happened and repeatedly requested to be seen by

---

(Inmate No. 420229), CONN. DEP'T OF CORRECTION, http://www.ctinmateinfo.state.ct.us/ (last visited June 8, 2020). The Connecticut Judicial Branch website states that Grimes was arrested on September 18, 2017, and convicted of criminal contempt of court and sentenced to 60 days' imprisonment on January 28, 2019. *See Criminal/Motor Vehicle Convictions – Search by Docket Number* (Docket No. S01S-CR17-0192194-A), CONN. JUDICIAL BRANCH, https://www.jud2.ct.gov/crdockets/DocketNoEntry.aspx?source=Disp (last visited June 8, 2020).

medical staff, but he was ignored. *Ibid.* (¶¶ 11-12). After he was placed in a cell with in-cell restraints, Grimes attempted to urinate but only blood came out. *Ibid.* (¶¶ 13-14). When Grimes pleaded to a touring correction officer that there was blood in his urine and "it burns real badly," and requested that the officer "call medical" to treat his various injuries, the officer laughed at him and dismissed his concerns. *Id.* at 10 (¶ 15). Grimes then described his bleeding issue to a state trooper and said he wanted to press charges, but despite stating that he would gather statements from the defendants and return, the trooper did not come back. *Ibid.* (¶¶ 15-17). The "intense severe pain" in Grimes's nose, stomach, and back, the "burning sensation" in his eyes, and his in-cell restraints prevented him from sleeping, eating, and using the restroom. *Ibid.* (¶¶ 17-18).

Later that afternoon, while Grimes was being led to the admission and property room before his transfer to Northern Correctional Institution ("Northern"), he spoke into a handheld video camera about the denial of medical care he experienced notwithstanding an unknown correction officer's brief attempt to muzzle Grimes with his hand. *Id.* at 10-11 (¶¶ 18-20).

After Grimes's transfer to Northern, a nurse supervisor scheduled an appointment with the prison physician "[d]ue to [his] injuries." *Id.* at 11 (¶ 21). In September 2018, x-ray images revealed a "[p]ossible . . . left nasal bone fracture" with "[m]ild overlying soft tissue swelling," *id.* at 18, and a urinalysis found traces of blood in his urine, *id.* at 11 (¶¶ 21-22). The beating also worsened Grimes's "pre-existing condition of diastasis recti within the abdomen area." *Id.* at 14 (¶ 32); *see also id.* at 28-29. Grimes can no longer regularly use the restroom or sleep consistently due to waking up in "extreme pain" in his abdomen. *Ibid.* (¶ 33).

In June 2019, Grimes wrote to Bridgeport's warden requesting assistance with filing a grievance about these issues because he is illiterate, *id.* at 19-20, but the warden responded that

an administrative review "could not substantiate" Grimes's claims and that Grimes was found culpable after administrative segregation and disciplinary hearings, *id.* at 21. *See also id.* 11-12 (¶ 23). Grimes was forced to proceed without assistance in filing his grievance. *Id.* at 12 (¶ 25).

That same month, Grimes submitted an Inmate Administrative Remedy Form (CN 9602) recounting substantially the same allegations as in his federal court complaint. *Id.* at 24-26. He explained that upon his transfer to Northern, the prison counselor gave him "fal[s]e information about what to do" and told him she would give his letter about what happened at Bridgeport "to the right people," but she "never told [him] about lap [*sic*] at all and [he] ha[s] to write all [his] stup [*sic*]." *Id.* at 26. In July 2019, his grievance was rejected because "[a]ccording the [*sic*] A.D 9.6, Administrative Remedies, you have thirty days to file a grievance from the date of its occurrence," and his grievance did "not meet[] the time frame." *Id.* at 25. In August 2019, he filed an Inmate Grievance Appeal Form (CN 9604) appealing the rejection on grounds that his illiteracy was not accommodated. *Id.* at 27. In October 2019, the appeal was denied because the initial grievance was not timely and noted that Grimes had exhausted his remedies. *Ibid.*

In February 2020, Grimes filed this lawsuit. Doc. #1. He alleges that the defendants violated the Fourteenth Amendment when: (1) the three correction officers used excessive force against him and Lieutenant McDonald failed to stop them; and (2) all four defendants were deliberately indifferent to his serious medical needs. Doc. #23 at 13-14 (¶¶ 28-31). He seeks compensatory and punitive damages as well as an injunction ordering the defendants to provide him with medical care. *Id.* at 14-15.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss

the complaint, or any portion of the complaint, if the complaint —(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a pro se complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See*, *e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Grimes has alleged that defendants used excessive force against him. The Fourteenth Amendment's due process clause "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). A plaintiff may prevail by showing that actions taken against him "are not rationally related to a legitimate nonpunitive governmental purpose," or "appear excessive in relation to that purpose." *Ibid.* Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).

Taken as true, Grimes's allegations support his excessive force claim against defendants. Defendants' allegedly repeated malicious acts, including beating and (in Lieutenant McDonald's

5

case) pepper spraying Grimes while he was lying prone on the floor, served no legitimate purpose. Although there may have been cause to subdue Grimes after he appeared to resist an order to leave his cell, the remaining allegations of repeated punching and kicking as well as pepper spraying make it plausible that defendants' actions were excessive in relation to that purpose. Grimes's excessive force claim may therefore proceed against all the defendants.

Grimes has also alleged that defendants were deliberately indifferent to his serious medical needs. The Fourteenth Amendment due process clause protects the rights of pretrial detainees against deliberate indifference to their safety or serious medical needs. A plaintiff must show that: (1) his conditions of confinement objectively "posed an unreasonable risk of serious damage to his health"; and (2) the official subjectively "acted intentionally to impose the alleged condition, or recklessly failed to act with the reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the officer knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 30, 35 (2d Cir. 2017).

Grimes's allegations do not support his deliberate indifference claim against defendants. After defendants beat him, Grimes suffered a burning sensation in his eyes, a fractured nose, painful and bloody urination, and extreme pain in his abdomen. But the question is not whether Grimes's injuries were sufficiently serious, but whether the inadequacy of treatment was. *See Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018). To that end, Grimes does not allege that any delay in treatment caused by defendants taking him straight to the RHU instead of the medical unit exacerbated his injuries. Additionally, he does not allege facts about the defendants' involvement after he was taken to the RHU. Although Grimes alleges that various other persons who have not been named as defendants may have further delayed his treatment and caused him

6

to suffer severe pain as a result, the named defendants' personal involvement had ceased by then. *See Vaughan v. Aldi*, 2019 WL 6467550, at *5 (D. Conn. 2019). I will therefore dismiss Grimes's claim for deliberate indifference to serious medical needs.

Because Grimes is currently confined at New Haven Correctional Center, Doc. #26, none of the named defendants are in a position to furnish any requested injunctive relief. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006); Doc. #32 (order denying motion for preliminary injunction). Accordingly, I will dismiss all claims for injunctive relief against the defendants and permit only the claims against defendants in their individual capacities for money damages to proceed.[2]

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

1. Grimes's Fourteenth Amendment claim for excessive force and failure to intervene may proceed against the following named defendants in their individual capacities: (1) Lieutenant Jeffrey McDonald; (2) Correction Officer Oscar Ramos; (3) Correction Officer David Roman, Jr.; and (4) Correction Officer Cretella.

2. The Court DISMISSES all other claims.

3. The Clerk shall verify the current work addresses for the above-named defendants with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses **within twenty-one (21) days of this Order**, and report to the Court on the status of

---

[2] Grimes's allegations and attached grievances raise doubts about whether he timely exhausted his administrative remedies, but because he alleges that he was essentially misled about how to properly file a grievance, I do not address the exhaustion issue at this stage. *See Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) ("Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process.") (emphasis omitted); *see also Ross v. Blake*, 136 S. Ct. 1850, 1860 n.3 (2016) (citing *Davis*, 798 F.3d at 295).

the waiver requests by not later than **the thirty-fifth (35) day after mailing**. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshal Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

4. All defendants shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

5. The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

6. The discovery deadline is extended to **six months (180 days) from the date of this Order**. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

7. The deadline for summary judgment motions is extended to **seven months (210 days) from the date of this Order**.

8. Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (*i.e.*, a motion to dismiss or a motion for summary judgment) **within twenty-one (21) days of the date the motion was filed**. If no response is filed, or the

response is not timely, the Court may grant the dispositive motion without further proceedings.

9. If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so may result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify defendants or defense counsel of his new address.

10. Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 10th day of June 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge